James E. Patterson, Esq.
Kathleen N. Fennelly, Esq.
**McELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN WAPELHORST,<br><br>            Plaintiff,<br><br>     v.<br><br>BERKLEY INSURANCE COMPANY, W.R. BERKLEY CORPORATION, BERKLEY ACCIDENT AND HEALTH, BERKLEY ACCIDENT AND HEALTH LLC, and BERKLEY ACCIDENT AND HEALTH, LLC,<br><br>            Defendants. | Civil Action No. 23-cv-00637 (MEF)(JSA)<br><br>**AMENDED COMPLAINT** |

Plaintiff JOHN WAPELHORST, by way of Amended Complaint against Defendants, hereby states:

1. Plaintiff resides at 6 Overhill Road, Wayne, New Jersey. Plaintiff has resided at this address since in or about 1998.

2. Defendant Berkley Accident and Health ("Company") is a corporation organized under the laws of the State of Delaware with its principal place of business in Hamilton Square, New Jersey.

    3.     Defendant Berkley Accident and Health LLC is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business in Hamilton Square, New Jersey.

    4.     Defendant Berkley Accident and Health, LLC is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business in Hamilton Square, New Jersey.

    5.     Defendant Berkley Insurance Company is a corporation organized under the laws of the State of Delaware with its principal place of business in Greenwich, Connecticut. At various times, Defendant Berkley Insurance Company has represented that Defendant Berkley Accident and Health is an "operating unit" of Defendant Berkley Insurance Company.

    6.     Defendant W. R. Berkley Corporation is a corporation organized under the laws of the State of Delaware with its principal place of business in Greenwich Connecticut. At various times Defendant W. R. Berkley Corporation has represented that it is the parent corporation of Defendant Berkley Accident and Health.

## JURISDICTION AND VENUE

    7.     This Court has jurisdiction over this matter as the Defendants have removed this case to this Court based on alleged diversity of citizenship which Plaintiff reserves the right to challenge following discovery on that issue.

    8.     Venue is appropriate in this Court assuming the removal by Defendants was proper.

## FACTUAL BACKGROUND

9. Plaintiff was employed by Defendants from October 2009 until the date of his termination, January 14, 2021. Plaintiff maintained offices at the Hamilton Square, New Jersey headquarters of the Company.

10. Defendants are engaged in the marketing and sale of insurance.

11. Plaintiff was 59 years old at the time of his termination.

12. Plaintiff was hired by the Company in 2009 to grow the Company's "stop-loss" medical claim reinsurance business. At the time Plaintiff was hired, the Company had a negligible amount of business in this area. Plaintiff had more than twenty years' experience in that specialty. Defendants recruited Plaintiff away from a lucrative position with another insurance company.

13. Plaintiff was particularly valuable to Defendants because of his close relationships with major consultants and brokers such as Towers Watson, Mercer, Segal and Willis. These consultants and brokers are the entities that broker requests for stop-loss coverage on behalf of their clients which include large companies, large labor unions, and substantial private and public employers and entities. The Company had virtually no relationship with the any of these consultants, brokers, and their respective clients in the stop-loss area prior to the hiring of Plaintiff.

14. As the result of Plaintiff's efforts and relationships, the Company's stop-loss business flourished and grew for many years, reaching more than $70 million in annual premium revenue. The Company profited handsomely from Plaintiff's contacts and efforts.

15. However, from in or about 2016 to the time of Plaintiff's termination, the Company embarked on a course of action designed to strip Plaintiff of his business relationships

and accounts and assign those relationships and accounts to younger, less-experienced employees, thereby depriving Plaintiff of commissions and future work opportunities.

16. The Company also refused to renew and cover claims for existing clients even though it had covered such claims in the past. In one instance, the Company refused to issue coverage for a potential policyholder for one of Plaintiff's clients because it was allegedly not a good business risk. It then transferred the client relationship to a significantly younger employee and agreed to provide the very same coverage for the client. The younger employee received the commissions for the transaction. Plaintiff did not. These efforts and other actions were part of a systematic attempt to discriminate against Plaintiff because of his age and to fabricate a business reason for termination.

17. There is further evidence of age bias against Plaintiff by Defendants. Throughout his employment, Plaintiff heard Company managers refer negatively to older employees and the fact that they were earning too much and should be terminated. Older employees, including Plaintiff, were subsequently terminated.

18. Moreover, in late 2018, the Company interviewed Plaintiff for the position of President. To his knowledge, he was the only internal candidate interviewed. The Company told him he was being seriously considered for the position. The Company eventually decided not to promote Plaintiff but instead filled the position with a substantially younger person with considerably less experience and qualifications.

19. The Company's alleged business excuses for Plaintiff's termination are false and a pretext for age discrimination. Plaintiff was told at the time of his termination that the Company was ending its involvement in certain stop-loss markets. However, Plaintiff is aware that the Company is continuing its existing stop-loss relationships with the consultants and

4

clients he serviced and continues to seek opportunities to write stop-loss coverage in those markets.

20. In addition, Plaintiff was told at the time of his termination that his job performance was not a factor in the decision to terminate his employment. Prior to the date of his termination, Plaintiff was never informed that his job was in jeopardy; nor was he put on a performance improvement plan pursuant to Company policy. However, after receiving a letter from Plaintiff's counsel after Plaintiff's termination, the Company, for the first time, asserted that poor work performance was a factor in the termination. Such post-hoc excuses highlight the pretextual nature of the Company's position. All of the foregoing suggests that the "going-out-of-business," "poor performance," and other excuses are false and intended to camouflage the real reasons for the termination – intentional age discrimination.

21. In addition to discriminating against Plaintiff because of his age, as shown herein, the Defendants wrongfully induced Plaintiff to accept employment with them through the use of false promises and misrepresentations which were false at the time they were made. Defendants also breached numerous promises and agreements with Plaintiff.

22. The Company recruited Plaintiff from a very successful position with another major insurance carrier. The Company promised Plaintiff that he could develop and expand the stop-loss business and substantially increase revenues and opportunities for compensation in that area. The Company further promised Plaintiff continued support and a wide platform to obtain and retain business.

23. One particularly troubling misrepresentation made by the Company at the time it hired Plaintiff involved its lack of commitment to affirmative action and diversity. Prior to and at the time he was hired by Defendants, Plaintiff had relationships with substantial public

5

employers and unions. In order to do business with these entities, an insurer must complete affirmative action forms indicating, among other things, that it has a diverse workforce and is committed to increasing diversity in its organization. The Company assured and promised Plaintiff by direct verbal statements made to Plaintiff, prior to the time he accepted the offer of employment, that the affirmative action requirements would not be an impediment to obtaining business with his public employer and union clients and that the Company welcomed the opportunity to expand its business with respect to these types of clients. These assurances and statements were not surprising given the Company's stated commitment to diversity in its policies and code of ethics. The promise and assurances were made by Christopher Brown and Steve Tingley. Brown held the position of Chief Executive Officer of Berkley Accident & Health and Tingley was Vice President of Berkley Accident & Health. These persons had authority to make said promises and statements on behalf of Defendants and they had the authority to offer the job to Plaintiff. These persons expected Plaintiff to rely on said promise and statements. These promises, statements, and assurances were false and were knowingly false at the time they were made. Plaintiff relied on these promises and statements to his detriment and lost substantial business and income due to this reliance. Had Plaintiff known they were false, he would not have resigned from his existing job and accepted employment with Defendants. Plaintiff has sustained substantial reliance damages as a result.

24. Once he joined the Company, Plaintiff discovered that the reality was just the opposite. Throughout the entire course of Plaintiff's employment, he was repeatedly directed not to bid on work that required proof of affirmative action. He was told by managers that the Company could not satisfy affirmative action requirements and had no intention of doing so in the future. As a result, the Company did not pursue business that could have resulted in millions

of dollars in revenue to the Company and significant commissions to Plaintiff. In short, contrary to the promises and representations made to Plaintiff before he was hired, there was no commitment to affirmative action and hiring and promoting minorities even if it meant the Company would lose business by not doing so.

25.     Plaintiff repeatedly objected to this state of affairs to various managers. His objections were ignored. Plaintiff repeatedly asked throughout the course of his employment and up until the time of his termination, including during the two-year period prior to his termination, that the Company satisfy affirmative action requirements so he could submit bids for the clients that required this information. Plaintiff was told by the Company in response throughout the course of his employment and until the time of his termination, including during the two-year period prior to his termination, that the Company would not satisfy such requirements. Plaintiff was substantially damaged by the Company's willfully false promises and misrepresentations concerning affirmative action. Plaintiff relied to his detriment upon said false promises and misrepresentations and sustained economic and reliance damages as the result thereof.

26.     Defendants also deprived Plaintiff of earned commissions in breach of its promises and agreements and in violation of the New Jersey Wage and Hour Law. Plaintiff's work and efforts resulted in the closing of several substantial contracts for 2021. These deals were closed in early January, just weeks before Plaintiff's termination. Defendants timed the termination to ensure the business was booked before Plaintiff was summarily terminated. Defendants have failed to pay the commissions despite a request from Plaintiff's counsel. Plaintiff is entitled to the commissions by the terms of the Company's written commission plan and also by the doctrine of quantum meruit.

## COUNT I

## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION

27. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 26 of this Complaint as if set forth fully herein.

28. By virtue of the foregoing conduct, including but not limited to, terminating Plaintiff's employment because of his age, Defendants have violated that New Jersey Law Against Discrimination ("NJLAD"). The course of continuing discriminatory conduct set forth in this Amended Complaint constituted a continuing violation of the NJLAD. The discrimination was continuous, cumulative, and synergistic in nature.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants awarding back pay, front pay, compensatory and punitive damages, damages for emotional distress and humiliation, attorneys' fees and costs, pre-judgment interest, and such other relief as the Court deems appropriate.

## COUNT II

## BREACH OF PROMISE AND CONTRACT

29. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 28 of this Complaint as if set forth fully herein.

30. By virtue of the foregoing conduct, including, but not limited to, impeding Plaintiff from the development of business, stripping away Plaintiff's clients and business opportunities, reneging on their promises and misrepresentations concerning affirmative action, and failing to pay earned commissions to Plaintiff, Defendants have breached their promises to and contracts with Plaintiff.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants awarding compensatory, consequential, and punitive damages, other legal and equitable relief, attorneys' fees and costs, pre-judgment interest, and such other relief as the Court deems appropriate.

## COUNT III

## PROMISSORY ESTOPPEL

31. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 30 of this Complaint as if set forth fully herein.

32. By virtue of the foregoing conduct, including but not limited to, wrongfully inducing Plaintiff to become employed by Defendant by means of false promises and misrepresentations that were knowingly false at the time they were made and upon which Plaintiff relied to his substantial economic and personal detriment, Defendants are liable to Plaintiff under the doctrine of Promissory Estoppel.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants awarding compensatory, consequential, and punitive damages, back pay, damages for emotional distress and humiliation, other legal and equitable relief, attorneys' fees and costs, pre-judgment interest, and such other relief as the Court deems appropriate.

## COUNT IV

## VIOLATION OF NEW JERSEY WAGE AND HOUR LAW

33. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 32 of this Complaint as if set forth fully herein.

34. By virtue of the foregoing conduct, including but not limited to, wrongfully depriving Plaintiff of earned commissions and wages, Defendants have violated New Jersey Wage and Hour Law.

WHEREFORE, Plaintiff demands judgment in his favor against Defendants awarding back pay, compensatory, consequential, reliance, and punitive damages, fines and penalties, other legal and equitable relief, attorneys' fees and costs, pre-judgment interest, and such other relief as the Court deems appropriate.

Plaintiff demands a trial by jury on all claims set forth in this Amended Complaint.

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Plaintiff


By: */s/ James E. Patterson*
James E. Patterson
A Member of the Firm

Dated:  January 11, 2024